INTERNATIONAL BUSINESS MACHINES v DEPARTMENT OF
TREASURY

Docket No. 184856. Submitted September 3, 1996, at Lansing. Decided
November 12, 1996, at 9:20 A.M. Leave to appeal sought.

International Business Machines brought an action in the Court of
Claims against the Department of Treasury, contesting the defend-
ant's assessment of use tax on computers manufactured by the
plaintiff and used by the plaintiff in its business operations in Mich-
igan. The tax was assessed on the manufactured cost of the com-
puters, including materials and labor. The plaintiff contended that
the tax should be assessed on the cost of materials only. The court,
Michael G. Harrison, J., granted summary disposition for the plain-
tiff. The defendant appealed.

The Court of Appeals *held*:

1. MCL 205.93(1); MSA 7.555(3)(1) provides that the use tax is
levied on the price of tangible personal property used, stored, or
consumed in Michigan. MCL 205.92(f); MSA 7.555(2)(f) defines
"price" as the aggregate value in money of anything paid by a con-
sumer to a seller in the consummation and complete performance
of the transaction by which the tangible property is purchased or
rented by the consumer for use, storage, or consumption in Michi-
gan. In this case, the price paid by the plaintiff for the computers
was the cost of materials. Therefore, the use tax properly is
assessed on the cost of materials only.

2. The use tax is a complement to the sales tax and is designed
to cover those transactions not covered by the sales tax. Here, pay-
ment of use tax based on the materials cost of the computers
would fully compensate for sales tax not collected at the time the
materials were sold to the plaintiff.

3. The plaintiff is not a manufacturer-contractor on whom the
use tax may be assessed on the total value of finished products to
be affixed to real estate.

4. Allowing the plaintiff to pay use tax only on the materials cost
of the computers does not give the plaintiff a tax advantage over its
competitors. Those competitors who use in their operations in
Michigan computers that they manufacture would be assessed use
tax on the same basis as the plaintiff.

Affirmed.

1. TAXATION — USE TAX — MANUFACTURERS.

A manufacturer that uses its own product in its business operations in Michigan is liable for use tax assessed only on the cost of materials for such product where the manufacturer is not a contractor and the product is not to be affixed to realty (MCL 205.92[f], 205.93[1]; MSA 7.555[2][f], 7.555[3][1]).

2. TAXATION — USE TAX — SALES TAX.

The use tax is a complement to the sales tax and is designed to cover those transactions not covered by the sales tax (MCL 205.51 *et seq.*, 205.91 *et seq.*; MSA 7.521 *et seq.*, 7.555[1] *et seq.*).

*Dykema Gossett PLLC* (by *Stewart L. Mandell, Kathleen McCree Lewis,* and *Gina M. Torielli*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Michael R. Bell,* Assistant Attorney General, for the defendant.

Before: MARKMAN, P.J., and MCDONALD and M. J. MATUZAK,* JJ.

MARKMAN, P.J. Defendant appeals as of right from an order granting plaintiff's motion for summary disposition. We affirm.

The facts in this case are not in dispute and are the subject of stipulation. Plaintiff, which manufactures and sells computers, uses some of these computers in its daily business operations in Michigan. Pursuant to a 1973 agreement with defendant, plaintiff paid a use tax on sixty percent of the manufactured cost of computers so used, which represented the price of the raw materials and component parts used to manufacture them. However, for the period between July 1, 1989, and December 31, 1991, defendant assessed

---

* Circuit judge, sitting on the Court of Appeals by assignment.

plaintiff a use tax based on the manufactured cost of computers so used including materials, labor, and overhead costs. Plaintiff appealed this assessment, asserting that the basis for the tax should have been the cost of the raw materials and components. In 1994, plaintiff paid the disputed tax and interest in full so that it could pursue its case in the Court of Claims.

In the Court of Claims, plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10). The only issue disputed by the parties was the meaning of "price," as used in MCL 205.92(f); MSA 7.555(2)(f), the definitional statute for the use tax. The parties agreed that the statute provided for imposition of the use tax based on the "price" of the items in dispute. The Court of Claims found that the term "price" included only the cost of materials and did not include the cost of labor. It stated that defendant's proposed definition of "price" as the full value of the property was inaccurate because the definition of "price" in § 2(f) does not refer to value. The court found defendant's reliance on *Honeywell v Dep't of Treasury*, 167 Mich App 446; 423 NW2d 223 (1988), for the proposition that a manufacturer that consumes its own product should pay use tax on the full manufactured cost of that product, to be misplaced. The court read *Honeywell* not to apply to all manufacturers, but only to manufacturer-contractors.[1] For these reasons, the court held that the use tax could be imposed only on the cost of raw materials here and granted plaintiff's motion for summary disposition.

---

[1] The parties stipulated that plaintiff is not a manufacturer-contractor.

On appeal, defendant contends that the trial court erred in its interpretation of the use tax statute and *Honeywell*.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993). "[T]he starting point in every case involving a statute is the language itself." *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). Where a tax statute is the object of judicial construction, "ambiguities in the language . . . are to be resolved in favor of the taxpayer." *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994). This Court also reviews decisions on motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994).

MCL 205.93(1); MSA 7.555(3)(1) states in pertinent part:

> There is levied upon and there shall be collected from every person in this state a specific tax for the privilege of using, storing, or consuming tangible personal property in this state at a rate equal to 6% of the *price* of the property or services specified in section 3a. [Emphasis added.]

"Price" is defined in MCL 205.92(f); MSA 7.555(2)(f), which states in pertinent part:

> "Price" means the aggregate value in money of anything paid or delivered, or promised to be paid or delivered, by a consumer to a seller in the consummation and complete performance of the transaction by which tangible personal property or services are purchased or rented for storage,

use, or other consumption in this state, without a deduction for the cost of the property sold, cost of materials used, labor or service cost, interest or discount paid, or any other expense.

The Court of Claims held that under § 2(f), "the basis for the tax is the price, that is, the aggregate value in money of anything paid by a consumer to a seller." It noted that "[p]rice is not defined in terms of value" and concluded:

The price of the subject property is the materials' cost only. It does not include labor cost associated with manufacturing the property. Although use of the property triggers the tax, the basis for that tax is the price. That the property has value at the time of its use greater than the materials' cost is not relevant.

With respect to § 2(f)'s preclusion of a deduction for labor costs, the court noted that because the cost of labor was not included in the "price" paid for the products in this case, it should not be included when valuing the item for purposes of the use tax.

Here, plaintiff is the consumer of the computer equipment at issue. Pursuant to § 2(f), the "price" consists of the "aggregate value in money" plaintiff "paid" to a seller for this equipment. Although plaintiff did expend money for labor and overhead in the construction of the computer equipment, it did not pay these moneys to a seller. The only "aggregate value in money of anything paid" for these products was the cost plaintiff paid for the raw materials. According to the plain language of the statute, the "price" paid by plaintiff, the consumer, to a seller was the cost of the raw materials of the computers.

In further support of its position, plaintiff cites *Int'l Business Machines Corp v Charnes*, 198 Colo 374; 601 P2d 622 (1979), in which the same valuation problem occurred under Colorado's similar use tax statute. In *Charnes*, the plaintiff's transfer of computers to its retail operation subjected the plaintiff to the Colorado use tax. *Id.* at 375. The plaintiff claimed that the taxable cost for these computers was the cost of materials, while the department of revenue claimed that the taxable cost should be the cost of the finished product. *Id.* at 376-377. The Colorado Supreme Court noted that the use tax is "supplementary" to the sales tax. *Id.* It then held at 377:

> Given the supplementary nature and equalizing function of the use tax, the burden on the taxpayer should be no greater than necessary to compensate for the sales tax originally avoided on the purchases.

The court reasoned that to levy the use tax on the "full finished goods cost" would be tantamount to making the use tax a value-added tax. *Id.* at 377. It noted that the raw materials were not taxed initially because they were tentatively treated as wholesale until later events made it possible to determine their correct classification. *Id.* at 378. It then held at 379:

> Therefore, since it is the *prior* purchase for use in Colorado which—in essence—attracts the tax when later recharacterized, the item should be valued for tax purposes at the *prior* time and in the form in which it was then cast. The levy should not be imposed upon the value of an item as measured at the later time of its diversion to use or consumption by IBM. The state's policy of equalizing taxes between sales and use tax obligors is fully satisfied by a tax upon IBM's "materials cost." [Emphasis in original.]

In Michigan, as in Colorado, "[t]he use tax is a complement to the sales tax and is designed to cover those transactions not covered by the General Sales Tax Act, MCL 205.51 *et seq.*; MSA 7.521 *et seq. Honeywell, supra* at 448. See also *Nat'l Bank of Detroit v Dep't of Revenue*, 334 Mich 132, 141; 54 NW2d 278 (1952). We accordingly find the *Charnes* court's reasoning persuasive. Here, payment of a use tax based on the materials cost of the property at issue would fully compensate for sales taxes not collected at the time the raw materials were initially sold to plaintiff. Thus, the complementary nature of Michigan sales and use taxes buttresses the conclusion that here the use tax should be levied only on plaintiff's materials cost for the computers at issue.

Defendant relies on *Honeywell, supra,* for the proposition that "price" includes the total cost of manufacturing a product. In *Honeywell,* the plaintiff, acting as a mechanical and electrical contractor, installed on the property of third parties fire and security systems that it also manufactured. *Id.* at 447. The plaintiff was assessed use tax on the total value of the finished products that it installed, including all manufacturing, fabricating, and processing costs. *Id.* at 448. This Court upheld this assessment, relying on an administrative rule promulgated by the Department of Treasury. *Id.* at 449-450. That rule, 1979 AC, R 205.71(6), stated:

> Where a manufacturer affixes his product to real estate for others, he qualifies as a contractor and shall remit use tax on the inventory value of the property at the time the property is converted to the contract which value shall include all costs of manufacturing, fabricating and processing.

The *Honeywell* Court also stated that the legislative amendment of MCL 205.92(f); MSA 7.555(2)(f), effective in 1982, supported its conclusion that in cases such as this, the use tax should be assessed on the full value of the item installed by the manufacturer-contractor. *Honeywell, supra* at 451. Here, however, plaintiff is not a manufacturer-contractor, but a manufacturer-consumer. Plaintiff is not involved with affixing the property that it manufactures to the real property of a third party. Therefore, *Honeywell,* based on an administrative rule applicable to manufacturer-contractors who affix property to the real property of third parties, is inapplicable to this case.

Similarly, the amended portion of § 2(f) that defines "price" as exceeding the cost of materials is inapplicable to the present case. This portion of § 2(f) states in pertinent part: "The price of tangible personal property, for affixation to real estate, withdrawn by a construction contractor from inventory available for sale to others or made available by publication or price list as a finished product for sale to others is the finished goods inventory value of the property." By its express terms, this definition of price is limited to property affixed to real estate by a manufacturer-contractor. The legislative history indicates that the purpose of the amendment adding this portion of the statute was to rectify the competitive advantage manufacturer-contractors enjoyed over other contractors by paying use tax on the inventory price rather than the sale price. House Legislative Analysis, HB 5207, January 7, 1983. Here, the parties stipulated that plaintiff is not a construction contractor and that the subject property was not affixed to any real estate. Accordingly, this portion of § 2(f) is

inapplicable to the present case. Moreover, the Legislature's articulation of a specific definition of "price" with respect to property affixed to real estate by a manufacturer-contractor, suggests strongly that this definition might not be equally applicable in other contexts. See *Southwood v Jennings*, 446 Mich 125, 142; 521 NW2d 230 (1994) ("We also recognize the principle that 'express mention in a statute of one thing generally implies the exclusion of other similar things.' "). Accordingly, this amended provision of § 2(f) also supports the conclusion that here the use tax should be levied only on plaintiff's material costs of the computers at issue.

Finally, defendant argues that by allowing plaintiff to pay a use tax only on the raw materials cost of the computer equipment at issue, plaintiff would have a tax advantage over its competitors. We assume that plaintiff's competitors are other computer companies, which presumably may use their own manufactured computers for internal business operations and pay use tax only on the costs of raw materials of such computers. This situation is different from that addressed by the amendment of § 2(f) and in *Honeywell*—where a manufacturer-contractor's savings on the use tax would have given such manufacturer-contractors a significant economic advantage over competing contractors who were not also manufacturers. Defendant's argument that plaintiff will receive an unfair economic advantage over its competitors is not similarly compelling here.

For these reasons, we affirm the Court of Claims order granting plaintiff's motion for summary disposition.

Affirmed.