### PAUL T. CONEE *v.* DEPARTMENT OF SOCIAL SERVICES*

Superior Court, Judicial District of New Britain
File No. CV-12-5015715

Memorandum filed June 10, 2013

*Paul T. Conee*, self-represented, the plaintiff.

*Jennifer L. Callahan*, assistant attorney general, for the defendant.

---

* Affirmed. *Conee* v. *Dept. of Social Services*, 155 Conn. App. 732, 111 A.3d 522 (2015).

COHN, J. The plaintiff, Paul T. Conee, appeals from a July 17, 2012 final decision of the defendant Department of Social Services (the department) rejecting the plaintiff's contention that his benefit under its Aid to the Aged, Blind, and Disabled (AABD) program was incorrectly determined.

The department initially determined on December 29, 2011, that the plaintiff was entitled to $148 in AABD benefits. On March 28, 2012, the plaintiff requested an administrative hearing to contest this amount, and this hearing was held on April 27, 2012. On July 17, 2012, the hearing officer issued the final decision.

The hearing officer made the following findings of fact and conclusions of law.

## FACTS

1. On December 29, 2011, the Department completed the Appellant's [plaintiff's] application for AABD benefits.

2. The Appellant receives $718.00 per month in Social Security benefits.

3. The Appellant pays $785.00 per month rent and lives alone.

4. On December 29, 2011, the Department determined that the Appellant was eligible for $148.00 per month in AABD benefits.

## LAW

1. Section 17b-600 of the Connecticut General Statutes (Conn. Gen. Stat.) provides in part that the Commissioner is authorized to implement and operate a state supplement program as provided for by Title XVI of the Social Security Act.

2. Uniform Policy Manual (UPM) 4520.05.B.1 provides that basic needs of AABD assistance units consist of

a consolidated personal needs standard and a shelter standard for permanent housing.

3. UPM Section 4520.05.B.3 provides that the shelter standard varies according to the housing classification, the actual cost of the housing and rates or limits established by the Department.

4. UPM Section 4520.05.B.4 provides that the shelter standard contains basic needs which are recognized by the Department and not incorporated into the personal needs standard.

5. UPM Section 4520.05.B.5 provides that the assistance unit's basic needs are equal to the sum of the personal and shelter need standards.

6. UPM Section 4520.15.A provides that rented living arrangements are considered non-rated housing.

7. The Department correctly determined that the Appellant lives in non-rated housing.

8. UPM Section 4520.15.B provides that the personal needs standard for assistance units residing in non-rated housing contains a cost allowance for the following expenses:

a. clothing;

b. cooking fuel;

c. electricity;

d. food;

e. heat;

f. hot water;

g. household supplies;

h. laundry;

i. personal incidentals;

j. telephone;

k. transportation.

9. UPM Section 4520.15.B.2 provides that the standard of assistance for personal needs for an individual residing in non-rated housing is $164.10 per month.

10. The Department correctly determined that the Appellant's personal needs standard is $164.10.

11. UPM Section 4520.15.C.1.a.3 provides that an applicant or recipient is considered to be living in Level 1 housing under the following conditions:

(3) he or she is living in any type of housing not mentioned in (1) or (2) above, and is not sharing his or her bedroom, bathroom or kitchen with another individual.

12. The Department correctly determined that the Appellant lives in Level 1 housing.

13. UPM Section 4520.15.C.1.b provides that the standard of assistance for shelter for assistance units living in Level 1 Housing is the amount that the assistance unit is obligated to pay for housing, up to $400 per month. This includes rent, mortgage principal and interest, fire insurance premiums, property taxes, and water bills.

14. The Department correctly determined that the Appellant's maximum shelter standard is $400.00 per month.

15. UPM Section 5030.15.A provides that unearned income disregards are subtracted from a unit member's total gross monthly earned income.

16. UPM Section 5030.15.B.1.a provides that the standard disregard is $227.00 for those individuals who reside in their own homes in the community or who live as roomers in the homes of others and those who

reside in long-term care facilities, shelters for the homeless or battered women shelters. Effective January 1, 2008, and each January 1st thereafter, this disregard shall be increased to reflect the annual cost of living adjustment used by the Social Security Administration. ($302.00 as of January 1, 2011.)

17. The Department correctly subtracted a $302.00 disregard from the Appellant's $718.00 earned income, leaving $416 net unearned income.

18. The Department correctly determined that the Appellant's net unearned income of $416.00 was below his $564.10 basic needs amount by $148.00.

19. The Department correctly determined that the Appellant's AABD benefit amount is $148.00.

The hearing officer concluded: "The Appellant argued that the Department's maximum standards for rent and personal needs are not high enough. The Department correctly calculated the Appellant's AABD benefit based on the maximum standards used in Connecticut compared to his income." The following decision was rendered: "The Appellant's appeal is DENIED." (Return of Record, ROR, Volume I, pp. 1–5.)

The appropriate standard of review is set forth in the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189. The standard has been applied recently and specifically to the department in *Hogberg* v. *Dept. of Social Services*, 123 Conn. App. 545, 1 A.3d 1287 (2010), a case denying Title XIX benefits: "[T]he scope of that review is very restricted. . . . [R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [The trial court] may [not] retry the case or substitute its

own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA, General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . It is fundamental that a plaintiff has the burden of proving that the [department], on the facts before [it], acted contrary to law and in abuse of [its] discretion . . . . The law is also well established that if the decision of the [department] is reasonably supported by the evidence it must be sustained." (Citations omitted; internal quotation marks omitted.) Id., 552–53.

In addition, our Supreme Court has stated with regard to administrative appeals claiming errors of law by the department: "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Internal quotation marks omitted.) *Szewczyk* v. *Dept. of Social Services*, 275 Conn. 464, 474, 881 A.2d 259 (2005).

The plaintiff has raised four issues that the court addresses.[1] The first is that the department has incorrectly calculated the amount due to the plaintiff under

---

[1] The plaintiff also raised for the first time in his brief the issue of the denial of his right to travel due to the allegedly low level of assistance that he received under AABD program. The court does not consider this issue in this appeal, as it was not raised at the administrative hearing. See *Burnham* v. *Administrator, Unemployment Compensation Act*, 184 Conn. 317, 321–23, 439 A.2d 1008 (1981).

the AABD program. The hearing officer, however, detailed under the applicable UPM regulations the method that the department followed in awarding the $148 benefit: $416 net unearned income is $148 less than $164 (personal needs) + $400 (shelter needs) and therefore the AABD benefit is $148. The court finds that there is substantial evidence to support this calculation.

The plaintiff secondly claims a due process violation by the department in that he was not granted a hearing until April, 2012, on his claim. The department replies that he was late in initially asking for a hearing. In any event, the plaintiff did receive a hearing in 2012. The most that the court could decide is that the plaintiff was entitled to a hearing; however, the hearing has now taken place. See *Carey* v. *Piphus*, 435 U.S. 247, 259, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978); C. Koch, Jr., Administrative Law and Practice (2010) § 2:25, p. 157 (the remedy for a failure to provide a hearing is to order that a hearing be held).

Thirdly, the plaintiff relies on an explanatory publication about the AABD program prepared by the department in August, 2009. (ROR, Volume I, pp. 16–17.) He argues that the brochure shows that the department will make an investigation of the actual expenses, including rent, paid out by the applicant for AABD assistance. He also argues that the brochure indicates that the department is to take into account actual shelter costs, not merely the costs as set in the UPM provisions. The court responds by noting that the department has tried to explain in general terms about the nature of the AABD program in its brochure. However, a brochure does not have the force of a legal requirement to supersede duly promulgated regulations. See, e.g., *KMART Michigan Property Services, L.L.C.* v. *Dept. of Treasury*, 283 Mich. App. 647, 654, 770 N.W.2d 915 (guide not governing, but merely explanatory), leave to appeal denied, 485 Mich. 898, 772 N.W.2d 421 (2009).

The main point that the plaintiff is making is that there are other programs, such as the RAP program or Section 8 housing that allow for a greater consideration of shelter costs. According to the plaintiff, the AABD regulations rely on an unrealistic and outdated amount for shelter costs, and this constitutes an equal protection violation. However, the department indicates that the RAP program and Section 8 are not grants of income, but approvals of the right to receive benefits. See Department's Brief, p. 14.

There are sufficient differences between the other housing programs and the benefits of the AABD program so that the court finds no violation of equal protection. See *Dandridge* v. *Williams*, 397 U.S. 471, 90 S. Ct. 1153, 25 L. Ed. 2d 491 (1970).

The plaintiff's appeal is therefore dismissed.