# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ALENNA MARIE ROCAFORT,

      Defendant-Appellant.

UNPUBLISHED
January 2, 2018

No. 321804
Kent Circuit Court
LC No. 13-000391-FH

ON REMAND

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted by a jury of unlawful manufacture of marijuana, MCL 333.7401(2)(d)(*iii*), unlawful possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(*iii*), and knowingly keeping or maintaining a drug house, MCL 333.7405(d). She was sentenced to 24 months' probation and appealed as of right. We previously affirmed the convictions. *People v Rocafort*, unpublished opinion per curiam of the Court of Appeals, issued January 7, 2016 (Docket No. 321804). Defendant filed an application for leave to appeal, and our Supreme Court, in lieu of granting leave, remanded the case to us for reconsideration in light of *People v Manuel*, 319 Mich App 291; 901 NW2d 118 (2017). *People v Rocafort*, 501 Mich 867 (2017). In *Manuel*, this Court affirmed the trial court's ruling dismissing the charges against the defendant on the basis that the defendant was entitled to immunity under MCL 333.26424, which is § 4 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. Because we conclude that the instant case is factually indistinguishable from *Manuel*, and because the Supreme Court remanded the case to us with the specific direction to reconsider our previous ruling in light of *Manuel*, we now hold that defendant was entitled to immunity under § 4 of the MMMA and that the trial court, therefore, erred in failing to dismiss the charges. Accordingly, we vacate defendant's convictions and remand to the trial court for dismissal of the charges.

Defendant harvested her marijuana plants, later placed the harvested marijuana leaves into canisters as part of the drying process, and the marijuana was then seized by the police, at which point in time, according to the trial court, the "marijuana was largely dried," with, at best, another day or two of drying to go. The evidence reflected that while the process of drying the marijuana was nearing the end, it was not completed. The marijuana weighed nearly six pounds

-1-

in its largely-dried state, and defendant was lawfully permitted to possess 15 ounces of "usable" marijuana, MCL 333.26424, which is defined as "the dried leaves" of a marijuana plant, MCL 333.26423(n). Defendant argues that there can be no criminal liability for possession of marijuana during the drying process, as it is not "usable" marijuana" at that stage. The question posed to us concerns the treatment of marijuana possession for purposes of immunity where marijuana leaves are seized by the police during the process of transforming the leaves into "usable" marijuana by drying them.

In *Manuel*, 319 Mich App at 300-302, this Court described the underlying factual circumstances, observing:

> In this case, defendant is both a qualifying patient and a primary caregiver for five patients, so he was allowed to cultivate up to 72 marijuana plants and to possess up to 15 ounces, or approximately 425.24 grams, of usable marijuana under the MMMA. It is clear that defendant stayed within the cultivation limitation because he only possessed 71 marijuana plants. However, he also possessed marijuana in tins that weighed in at 1,195 grams, 1,068 grams, and 1,169 grams[, as weighed three different times], or nearly 2 ½ times the legally permitted amount of "usable" marijuana. The question, however, is whether this marijuana was "usable" for purposes of the MMMA.

> * * *

> At the evidentiary hearing, [plant biologist] Telewski testified that the weight difference in the marijuana from the time [Detective] Rozum weighed it immediately after the search (1,195 grams) to the time [forensic scientist] Schafer weighed it in the laboratory on July 2, 2014 (1,068 grams) was best explained by a "loss of moisture, so the material on the earlier date weighed more because it had a higher moisture content than the material that was subsequently weighed several weeks later." Although Telewski recorded the weight of the marijuana as 1,169 grams on December 22, 2015, unlike Rozum and Schafer, he weighed the marijuana in its packaging and acknowledged that he did not calibrate the scale before taking the weight. Telewski opined that marijuana could take anywhere "from a few days to 14 days" to dry. Defendant testified that he had started drying the marijuana "two or three days" before Rozum executed the search warrant, and he planned to keep the material drying "about six, seven days more." This evidence suggests that the marijuana defendant possessed was "drying" rather than "dried."

Adopting the reasoning in an unpublished opinion issued by this Court, the *Manuel* panel held that "usable" marijuana only encompasses marijuana that has completed the drying process and not marijuana that is still in the process of being dried. *Id.* at 301-302. This Court then held:

> Given Telewski's expert testimony that the weight differential of 127 grams was most likely due to a loss of moisture, and defendant's testimony that the harvested marijuana was in various stages of drying because not all of it had been placed in the tins at the same time and had only been in the tins two to three

days, we are not definitely and firmly convinced that the trial court made a mistake when it found that the marijuana was in "various stages of drying" and therefore was not usable under the MMMA. Put simply, the marijuana was "drying," not "dried," and therefore was not usable under the statutory definition. [*Id.* at 303.]

After concluding that the defendant had also established that he had been issued and possessed a valid registry identification card, had properly stored the marijuana plants, and was engaged in the medical use of marijuana,[1] the *Manuel* panel held that "the trial court properly concluded that defendant was entitled to § 4 immunity, and therefore it did not abuse its discretion by dismissing the charges against him." *Id.* at 303-307.

Here, as indicated above, defendant was still in the process of drying the marijuana when it was seized by the police; it was only largely dried and thus did not constitute "usable" marijuana.[2] Under the analysis in *Manuel* and given that all of the charges against defendant were based on marijuana that was still in the process of being dried, defendant was entitled to immunity under § 4 of the MMMA and the trial court, therefore, erred in failing to dismiss all of the charges. Accordingly, we vacate defendant's convictions and remand to the trial court for dismissal of the charges.[3]

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Cynthia Diane Stephens

---

[1] These matters are not at issue in the case at bar; defendant was in compliance.

[2] We decline to attempt to specify at what particular point marijuana can be deemed "dried," acknowledging the expert testimony that marijuana will always contain some level of moisture. For purposes of our analysis, we simply rely on the evidence and the trial court's finding that defendant's marijuana, while nearing the end stage of drying, was still in the process of being dried when it was seized.

[3] To the extent that *Manuel* conflicts with *People v Carruthers*, 301 Mich App 590; 837 NW2d 16 (2013), the Supreme Court specifically directed us to reconsider this case in light of *Manuel*, not *Carruthers*. Moreover, *Manuel* is directly on point, as it also involved the treatment of marijuana that is seized during the drying process employed to transform it into "usable" marijuana, whereas *Carruthers* concerned whether marijuana-infused brownies constituted "usable" marijuana.